5th Amendment guarantees an alien the right to counsel of their choice. The Lopezes, in this case, made that election and chose Mr. Miguel Gata to represent them in the removal proceedings. Unfortunately, the man they hired, Mr. Gata, is, as you say, one of these notoriously incompetent and dishonest immigration lawyers. So incompetent, actually, in this fact, that the BIA took the extreme step of suspending him from appearing before their courts. Unfortunately, again, after they suspended him, neither the BIA nor Mr. Gata bothered to tell their client, the Lopezes, that he could no longer represent them. And that had two consequences, Your Honor. First, they needed to go look and find new counsel. Second, is that they were therefore unwittingly conscripted into representing themselves. The Fifth Amendment's provisions of due process, Your Honor, require that in order for an alien to represent themselves in removal proceedings, there absolutely must be a knowing and voluntary waiver of the right to counsel. There was no such waiver in this case, and therefore, the Lopez's constitutional rights were violated. Now, in a case where there's never any lawyer involved and the alien simply shows up without counsel, what is done to ensure that they are there voluntarily without counsel? Sorry, sir, I didn't hear the beginning part of your question. In a case where an alien appears in immigration proceedings before an I.J. or in front of a BIA without counsel, it's not as though they had counsel who's being a bad counsel or has been disbarred. They simply show up without counsel. What, if anything, is done by the I.J. or by the BIA to ensure that this person is voluntarily, as you say, and knowingly waiving the right to counsel? Well, the I.J. is required not to assume just mere silence. In the Balthazar case, for example, the mere silence of an alien on the record after they've elected to choose the right to counsel is not enough for a knowing and voluntary waiver. So there must be some kind of speech from the I.J. informing them of what the consequences of their decision would be. Where does that requirement come from? Is it more than simply a custom? This is due process, Your Honor. The Fifth Amendment requires a knowing and voluntary waiver. You have a case law that says that with respect to immigration proceedings? I would like there to be such a case. It would make that question easier. And this is, I actually got it wrong, Your Honor, it's Tawadros. And the cite for that is 364 F. 3rd 1099. And the Court has said, we have also explained that when the record indicates the petitioner's desire to be represented, the I.J. should not assume that silence or failure to affirmatively request counsel is a de facto waiver. And in this case, Your Honor, that's all there was, silence. The Lopezes were never informed that they were not continuing to proceed in the BIA without representation by counsel. Yeah. I think I know the answer to this, but I want to ask it anyway. Do we have any cases? I mean, I've never seen a case like this in which, by the time the case gets to the BIA, the person has been disbarred from practicing in front of the BIA, pretty much everywhere else in the world. The BIA knows this in the sense that the BIA itself has done the disbarring, and the client doesn't, and the BIA says nothing. Do we have any other cases that have been litigated where this has happened? Well, Your Honor, there is one. It's an unpublished decision of this Court, and it's attached to tab 3, which is very — it's actually pretty much the exact same thing that happened here, because Mr. Gatta represented the one. And it's Mr. Gatta as well, right? Yes. And I don't know whether you're within our rules or without our rules. That is to say, it's a pre-January 1st mem dispo. After January 1st, you get to cite them, but not the earlier ones. Yes. Okay. He was being very cautious about mentioning it. Yes. Yes. I was invited to error. I apologize. Well, thank you, Your Honor. The other point that I would like to make in this is that, despite what the government says, there is real prejudice here. And there is an argument in our brief that this Court need not reach that decision because the Court can assume prejudice whenever there is a deprivation of the right to counsel under the Fifth Amendment. But just turning to actually whether there was real prejudice, the standard is whether — it's not whether the evidence would have affected the outcome of the hearing. It may have been affected by the constitutional violation. And I think it's clear in this case that had the Lopezes had the right, had had actual competent counsel — well, sorry, if they'd known, if the Lopezes had known that they were not being represented by competent counsel, they would have gone out, they would have got themselves new competent counsel. In fact, the record reflects that in this case, the Lopezes were informed actually by this Court in 2004 that they were no longer being represented by — that their counsel had been suspended and subsequently disbarred. One month later, they hired new counsel, Mr. Bruce Wong. And so they would have gone out and they would have hired new counsel, and that new counsel would have taken a look at the record and they would have seen that Mr. Gatta just failed to do anything, put any facts in the record that were sufficient to show the undue hardship requirement. And that — and that is real prejudice, Your Honor. And that would not have happened if the BIA had, for example, taken the steps that this Court took. When this Court disbarred Mr. Gatta, the Court in its order required Mr. Gatta to take actually five steps. But any one of those steps would have been sufficient to give the Lopezes the knowledge that they were no longer being represented by counsel. Specifically, the Court required him to file notices of withdrawal in all pending cases before the Court. Two, required him to inform his clients that he could no longer represent them. And three, required him to inform them that they should seek new counsel, and if they couldn't hire new counsel, they should either appear pro se or they should ask the Court for appointed counsel. And if the BIA had done any of that, I would not be here today. Thank you. Good morning once again. My name is Jesse Bless. And the microphone is low and you're tall, so just do your best to speak. Before we can even look to the merits, and I have an argument that suggests we shouldn't even address the merits here because the Board did not with regard to the ineffective assistance or failure to inform, I want to point to one thing, and that is the October 2001 notice of disciplinary action against Mr. Miguel Gatta in which it tells him, you are directed to promptly notify in writing any clients with cases currently pending before the Board. Let me read with you. Where are you? Your Honor, it's an authority that I have to put. It's a published authority, but I have it. It's not in the record, mainly because the argument in the brief seems to have taken a new light. And the argument in the briefs was whether the Court would even have jurisdiction to raise this claim. But in the reply brief, excuse me, on page 9, the Petitioners say, but the BIA fail to either tell the Lopez's or to order Gatta to tell the Lopez's, and they cite to this Court's rule in the case in which they did so and the authority they cite. I just want to clarify that the Board did in fact take this action. But we don't have that on the record in front of us? But it's an authority. It's publicly made available authority of decision by the Board. How do I find that? It has to be in the brief.  I have not, Your Honor. You know, rather than do it orally, it might be useful just to make sure we get it right if you could write it down on a gum sheet and make sure that the Court gets it at the conclusion of argument. Absolutely. Absolutely, Your Honor. I just want to make it known that they also directed that that order be made public in 2001. So it's disingenuous to suggest that the BIA didn't take any steps here. In fact, their procedure in this case complied with the Supreme Court law that says you have to make notice publicly available when you take action. And they have a right to rectify it now. And so they directed Mr. Gowda to notify his clients. It sounds as though Mr. Gowda didn't do that. He might have not done that. So he might have not done that. But that's not a violation of the Board's responsibility under due process. If there was a statutory right or regulatory right for the Board to act, we're talking about a constitutional right. Yeah, you know, I'm reluctant to bring in old chestnuts like Mullane v. Central Hanover Trust. But if we're talking about due process notification, the formulaic phrase out of Mr. Justice Jackson's opinion of Mullane is notice reasonably calculated under the circumstances to reach the intended recipient. Now, publication of a notice to an uneducated group of asylum seekers and aliens and so on, which by and large these people are, is not likely to reach. And direction to someone who has been disbarred from practice, and this comment is directed at the Ninth Circuit as well as at the BIA, I'm not sure how reasonably calculated that is when the premise of the order is that this guy doesn't fulfill his responsibilities. Now, I'm not sure whether Mullane is the applicable standard. I'm making this up. But it occurs to me that if you're trying to figure out, if you're sitting there in the BIA and you've entered this order and you're just predicting how many of his clients are going to find this out, maybe, maybe not. Hard to know. I'm worried about it. If a lot of money depended upon it, if my own fate depended upon it, I confess I wouldn't put a lot of money on that proposition, you know. Your Honor, I just would like to point out that this is the same procedure that the State of California follows in Rule 955, where they direct their attorney to do that in disappointed proceedings. And just to anticipate the reason why. Although the State of California is in a different position from the BIA and from us, that is to say the cases aren't filed in pending in front of the State of California. They are filed in pending in front of the BIA. They have a counsel list. They have the means of notifying the individual clients, as do we. I mean, I have to say my comments, I think, may be equally applicable to the Ninth Circuit as to the BIA. Your Honor, I guess just to finish the thought, there is due process that is owed to the attorney as well and confidentiality, which is put forth in the board's regulations that, you know, for them to go out, it may overstep their bounds to go and individually notify, hey, we are suspending your attorney. Now, that's an issue for the board to decide. But they also owe due process to the attorney as well as to the clients of that attorney. And that may be that they, their consideration is that this is the best procedure to ensure fairness to every side. Wait a minute. You're saying that on the one hand, Mr. Gadda has to notify them that he's been disbarred. On the other hand, it's a violation of his privacy for the board to do precisely the same thing in notifying those very same clients? That can't be. To take it upon their shoulders to do so. Regardless of that concern, the board has never decided the merits of the failure to inform or the ineffective assistance. So we have a – there's a problem in this case for the court to take it up in the first instance. There was a motion to reopen filed by new counsel. The board decided we're going to toll it. We'll even toll it from the point where the Ninth Circuit provided notice to you, 2004. However, you've waited 10 months. That's not due diligence. So we're not going to address your arguments. Now, I don't know what the claim would be. This was not Miguel Gadda. This is the new counsel. So the board never addressed these concerns. Or they did address them. They said, you know, in the motion to reopen, there's timeliness concerns, and you didn't act with due diligence. Those, the timeliness grounds have never been addressed in the brief made by the Petitioner. So for the court to address the board's decision in this case, if they were going to even address the April 15, 2004, order of the board, because the petition for review was filed upon the merits in this case, which was an exceptional and extremely unusual hardship, which is unreviewable because it was discretionary. If the board was going to reach back and somehow have jurisdiction to address the claims made in that motion to reopen, well, it seems that the Petitioners have waived any argument that their motion to reopen was somehow timely or that the board didn't toll it far enough or abused its discretion in some other way. I mean, there's really, the record is pretty, there's absence of any evidence of the ineffective assistance of counsel or any new evidence. In fact, in the motion to reopen, there was never, there was never any additional evidence of any hardship to, on the merits. And that was three years after the board initially decided the case. And I just want to also point out, because the factual history in this case is very complex. There's a lot of facts, a lot of different dates that are all relevant here. At all relevant times, even up until briefing, Mr. Miguel Gatta was licensed before the board. It was the seven months between the fact, between briefing and the decision of the board, that the board had it, had all the evidence presented before a licensed attorney, that it decided the case. Even when he filed the first petition for review before the Ninth Circuit, he was licensed before this Court. Even when he filed the brief, he was licensed. The Ninth Circuit in this case didn't, it stayed the disciplinary proceedings until the California Supreme Court issued its final decision, which was on January 22nd, 2003, effective February 1st, 21st, 2003. So, you know, at all relevant times in this case, Miguel Gatta was licensed. You know, and there's no, there has been no showing, even if there was an error, where is the prejudice? They suggest in their brief that, well, maybe we could have filed a motion to reopen. Well, three years after they did, there was no additional evidence presented. There was no additional evidence of hardship to the petitioner. They were talking about the merits. There was nothing there. So we have the failure to file a timely motion to reopen, which the board decided. We have no appeal, we have no petition for review on that order. We have a petition for review filed on the October 28th, 2005 order on the merits, which is the merits-based decision. And we have these claims that the record just is bereft of anything for the court to decide. So there seems to be a jurisdictional loop that has to be crossed, and there has to be a little bit of a waiver. There's a waiver issue presented, because for the board to decide on timeliness grounds, shouldn't that be the issue that the court must decide in the first instance? How do we get to the merits here if the reason the board decided the case has not been addressed? It seems that the petitioners are in a sticky situation. Notwithstanding those facts, even to address the merits, where is there showing of prejudice if the reason is we would have filed a motion to reopen? Okay, you had that opportunity. There was no evidence presented. In fact, it was untimely by the new counsel. Secondly, just because Miguel Cata was inherently incompetent, as all courts that have decided the issue have decided, doesn't mean he was incompetent in this case. All appeals – I'll take one more second to finish this thought, if I may. All appeals were filed timely. The petition for review was filed timely. He filed a brief that was timely. And there was no showing that he, under underlying immigration judge proceedings, did anything that was incompetent in this case. Thank you, Your Honor. Roberts. Thank you. Response. Thank you, Your Honor. I'd like to start off with the reasonable notice idea that you yourself raised, that I have not read this – the particular authority that counsel is citing, I must  not respond to it right now. And until we see it in the form in which it appears, I'm not sure whether we can take cognizance of it. But let me, just to be safe, address a couple of things based on his representation of it. First, as Your Honor noted, it was publication notice. This Court did much more. First of all, they required Mr. Cata to withdraw from all pending cases. That would have made a difference. Second, the Court also required Mr. Cata to file what essentially was a notice of compliance, meaning that I've done what the Court ordered me to do. And that also makes a difference because the U.S. Marshal Service is something that should not be trifled with. Third, this Court required the provision of all the names and addresses of Mr. Cata's clients to it when he filed that motion, that notice of compliance. And that also would have mattered because this Court took a much more proactive role than merely, as you say, providing publication notice. The second thing, as far as the motion to reopen, the government has made this jurisdictional argument, but it's unclear exactly why the Lopezes needed to appeal the motion to reopen, which the government admits was denied purely on procedural grounds, on the fact that it was a timely. The Lopezes gave the Board the chance to right their wrong. They brought the waiver claim. They brought the ineffective assistance of counsel claim. They brought that to the Board's attention. The Board chose not to act on that and chose to find that it was untimely. There was no obligation for the Lopezes to appeal that discretionary motion. Was there any obligation for them to bring the motion to reopen in the first place? No, Your Honor. Because? Because, and I'm going to cite actually, well, there's a statute. First of all, 8 U.S.C. section 1105AC provides that an alien must exhaust only those administrative remedies that are available to him as a matter of right. And then when you look, the motion to reopen is not a matter of right. Okay. And further, actually, I would also on this note note that in Alcarez v. INS, the court has held we do not require aliens to exhaust administrative records on legal issues based on events that occurred after briefing to the BIA has completed. And that is the case here, Your Honor. In fact, the case, the timing of this was that the Lopezes didn't realize they'd always been represented by suspended and subsequently disbarred counsel until they were in front of the Ninth Circuit. And so there was no opportunity to bring this to the BIA's attention while they were rightfully before the BIA. They filed the motion to reopen to give them a chance to hear it. And then if the BIA had actually stepped up, you get the point, Your Honor. Thank you very much for your time. Further questions from the bench? Thank you both sides for your useful argument. Case of Lopez-Rizzo v. Gonzalez is now submitted for decision. The last case on the argument calendar is United States v. and I'm not sure I'm going to be able to pronounce this correctly, Lukasinovich.
judges: Hug, W. Fletcher, Holland